THE STATE v. GEORGE COUCH, *alias*, GEORGE FITZWATER, Appellant.— 111 S. W. (2d) 147.

Division Two, December 17, 1937.

1240

*Louis E. Miller* and *Wm. C. McLaughlin* for appellant.

*Roy McKittrick,* Attorney General, and *W. W. Barnes,* Assistant Attorney General, for respondent.

WESTHUES, C.—Appellant was convicted of murder in the first degree and sentenced to life imprisonment. He appealed.

The evidence disclosed the following facts: On the night of April 29, 1934, shortly after eleven o'clock, a man dressed in a dark blue suit and wearing a light gray hat attempted to rob a street car near Fourth Street and Franklin Avenue in the city of St. Louis, Missouri. The attempt to rob created a commotion, and the culprit became frightened, kicked the glass out of the car door and escaped. The attempted robbery was reported to an officer named Siko, who immediately began an investigation. Shortly thereafter a number of pistol shots were heard and officer Siko was found shot and mortally wounded. He was taken to a hospital where he gave a description of his assailant which corresponded to that of the man who had attempted to rob the street car. During the night a man named DeMore, who was wearing a dark suit and a light gray hat, and who generally answered to the description of the man wanted, was arrested as a suspect. The motorman of the street car identified DeMore as the person who had attempted to perpetrate the robbery, and officer Siko identified him as his assailant. Sometime thereafter Siko died. DeMore at first strenuously denied the charge, but after a number of days, during which he was frequently questioned, he entered a plea of guilty and was sentenced to life imprisonment. After DeMore had commenced his sentence appellant was arrested. During the investigation that followed, a light gray hat and a number of empty shells were found upon a roof of a building near the place where Siko had been shot. A number of the shells were such as would fit Siko's gun. Siko's revolver had been taken by his assailant. The murderer had been seen standing over Siko shooting him. Siko's assailant also fired a number of shots at the man who saw this shooting. Appellant had been living with his sister at 3513 Cass Avenue. In the room occupied by appellant the police found a grip containing the revolver of officer Siko and also another revolver. Appellant was then charged with the murder of Siko. DeMore was later pardoned by Governor Park.

■ Appellant has filed no brief in this court. His motion for new trial contains forty-nine assignments of error. Many of these pertain to the same point of law. Some are general in their nature and preserve nothing for our review. Others are not supported by the record, that is, in a number of assignments appellant complained of the admission of testimony, but during the trial made no objection to such testimony. We will dispose of the points preserved for our review. ■ Appellant asserted that the evidence was insufficient to sustain the verdict. The State introduced evidence that appellant had, through his brother Russell, borrowed a 38 revolver from one Kemper the day before Siko was shot. This revolver was obtained from Kemper by the police department. An expert on identification of firearms testified that he made a test of one of the 38 special shells found on the roof, and this shell revealed it had been fired from Siko's revolver. Another test of one of the 38-caliber short shells disclosed that it had been fired from Kemper's revolver. Appellant's brother, Russell, testified that he borrowed Kemper's revolver and delivered it to appellant on Sunday, April 29, 1934; that appellant returned it the following day and he, Russell, in turn delivered it to Kemper. It was also shown that appellant had a dark blue suit, and that the gray hat found on the roof fit appellant much better than it did DeMore. A witness named Schumaker, who lived in south St. Louis, testified that he had known appellant for many years; that on the morning of April 30, 1934, at about three o'clock, appellant came to his home and asked to be admitted; that he prepared a cup of coffee for appellant. This witness further testified in substance as follows:

"And he told me he got in a street car and started to stick up a motorman, and the motorman wouldn't hold still, and he says he kicked the glass out of the door, and he jumped right out in the copper's arms. He said he ran, I don't know how far; he said he ran until he got winded, then he turned into an alley and the policeman came up behind him and said 'Stick up your hands; give me that pistol,' and he says he turned around and shot that s—of-a-b—right in the face. Then he grabbed the copper's gun and he said some big flat-foot come running down the street and he threw a few slugs at that s—of-a-b— and all you could see was feet. He says he ran some more and hid behind some barrels for a while; he got from behind there and climbed up a rain spout and got up on a roof. He told me he left his hat and several of the empty shells on the roof; he stayed up there I don't know how long it was. He said the scout cars was lousy around there. As soon as they left he got down and made his way to my house."

The story told by witness Schumaker coincides with other facts proven. For example, a witness testified that he saw the shooting and as he approached the scene the officer's assailant shot at him and

he retreated. Other evidence also shows that the man who attempted to hold up the street car kicked the glass out of the door and escaped. As to identification, a witness testified that at a distance of seventy-five feet he could not distinguish appellant from DeMore. The motorman also testified that DeMore and appellant looked very much alike. Appellant's brother, Russell, testified that appellant told him substantially the same story as that related by witness Schumaker with reference to the attempted robbery and the shooting of officer Siko. Both of these witnesses testified that appellant showed them a large blue pistol which he claimed he had taken from a police officer.

Appellant's defense was an alibi. The evidence to sustain this defenses seems to us very unsatisfactory. Appellant, in his motion for new trial, contended that the evidence conclusively showed that he was at the 3513 Cass Avenue address at eleven o'clock; that he, therefore, could not have been at Fourth and Franklin at the time of the attempted holdup. The attempted robbery occurred at about eleven-fifteen P. M. Conceding that appellant was at 3513 Cass Avenue at eleven P. M., there is nothing in the record to show that he could not have been at Fourth and Franklin at eleven-fifteen P. M. The evidence related, if true, is sufficient to sustain the verdict. Other incriminating facts were shown, but it is unnecessary to encumber the record with further details.

Appellant assigned error to the ruling of the trial court in permitting witness Lewis to express his opinion that a test disclosed that a shell found upon the roof had been fired from the officer's gun, and another shell from Kemper's revolver. Appellant asserted that the witness's own evidence disclosed he was not a ballistic expert. The witness did testify that he was not a ballistic expert, but that he had had much experience in the work of identifying firearms; that the term "ballistic expert" did not apply to his line of work. In this the witness may be technically correct. But, be that as it may, the witness's testimony disclosed that he was an expert in the identification of firearms and bullets by the comparison method by means of a microscope. The method used in this case to identify the shells and revolvers was similar to the method employed in the case of State v. Shawley, 334 Mo. 352, 67 S. W. (2d) 74, l. c. 80. The question was there fully considered and it was held that the witness was qualified to testify. The rule is now well settled that such evidence is competent and may be considered by the jury in arriving at a verdict. [State v. Markel, 336 Mo. 129, 77 S. W. (2d) 112; State v. McKeever, 339 Mo. 1066, 101 S. W. (2d) 22, l. c. 28 (11-13); Evans v. Commonwealth, 230 Ky. 411, 19 S. W. (2d) 1091, 66 A. L. R. 360, ann. p. 373.]

In a number of assignments of error appellant complained because the trial court permitted police officers, Aylward and Mc-

Laughlin, to testify that DeMore denied having shot Siko. Appellant offered these witnesses and on direct examination brought out that DeMore had admitted to these officers that he had shot officer Siko. On cross-examination by the State's attorney it was shown that DeMore first denied the commission of the crime, but admitted it after he had been identified by the motorman and the assaulted police officer. The record discloses no objection to this evidence, and therefore nothing is preserved for our review.

■ Appellant also complained because the State was permitted to introduce in evidence the pardon issued by the Governor to DeMore. The trial court permitted only that part of the pardon to be read to the jury which showed that DeMore had been discharged. The reasons set forth in the pardon certificate were rejected. Appellant introduced evidence in detail concerning DeMore's plea of guilty and all the oral admissions made by him. Appellant also was the first to introduce evidence that DeMore had been discharged from prison. This evidence was competent for the purpose of establishing appellant's innocence. The trial court permitted appellant to show in detail all the circumstances concerning the identification of DeMore and his plea of guilty. Appellant is not in a position to complain of the action of the trial court in permitting the State to show that DeMore had been pardoned, because appellant had previously introduced evidence showing that fact. The pardon, as introduced by the State, did not add anything to the evidence as introduced by appellant.

■ Appellant asserted in a number of assignments that the trial court permitted the State to cross-examine the defendant upon matters not referred to on direct examination. Appellant, during his examination in chief, testified as to every phase of the case. He testified in detail as to his whereabouts, contradicting the State's witnesses on this question, as well as the statements he was alleged to have made with reference to the shooting of officer Siko. He denied the visit to Schumaker; denied that he informed Schumaker that he had shot the officer, and also denied ownership of the grip in which the revolvers were found. Appellant also testified that he was cn parole from a sentence for robbery in the State of Indiana. Appellant having thus testified upon every phase of the case was subject to cross-examination as to all these matters and the trial court did not err in permitting the State's attorney to do so. [State v. Glazebrook (Mo.) 242 S. W. 928, l. c. 931 (4); State v. Gilmore, 336 Mo. 784, 81 S. W. (2d) 431, l. c. 432 (2), and cases there cited.]

■ In ten different assignments of error appellant asserts that the State in this prosecution was making a collateral attack upon a prior judgment; that the only way to avoid that judgment was by an equitable proceeding to have it set aside. The conviction of

DeMore for the offense charged could not be pleaded in bar by appellant, because appellant was not a party to that prosecution and was in no way affected by that judgment. Whether DeMore was rightfully or wrongfully convicted was no concern of appellant's. Of course appellant had the right to and did show that the State's witnesses had identified DeMore and that the State accepted the plea of guilty entered by DeMore. This evidence was competent and the jury had the right to consider this evidence in passing upon the guilt or innocence of appellant, and also as affecting the credibility of the State's witnesses and the weight to be given to their testimony. The State, however, was not estopped, by the previous conviction of DeMore, to prosecute another person for the same offense, even though it was conceded that only one person committed the offense. If the State secured a conviction of an innocent party and later learned that another had committed the offense, the State in justice ought to rectify its mistake. The officials in charge of this prosecution should be commended for their interest in securing the pardon for DeMore. We say this because under the circumstances it seems clear to us that DeMore was innocent and entered a plea of guilty only because he was a stranger in the community and feared the noose in case of a trial, as he had been identified by the police officer and the motorman as the guilty party. The rule applicable to this situation is well stated in 16 Corpus Juris, 257, section 421, as follows:

"It is well settled that conviction of another person for the same offense cannot be pleaded or offered in evidence as a bar to a prosecution." [See, also, 34 C. J. 969, note 90; Woody v. State (Okla.), 136 Pac. 430, l. c. 432 (8); Huggins v. State (Ga.), 103 S. E. 32 (Syl. 3).]

In Justice v. The Com., 81 Va. 209, l. c. 217, 218, the court, in discussing the question of whether the State was estopped by a judgment in a criminal case, said:

"But the doctrine of estoppel, strictly speaking, is not applicable to the Commonwealth in a criminal prosecution. The nearest approach to it is the doctrine, founded on the maxim of the common law, that no one shall be twice put in jeopardy for the same offense. 'This doctrine,' says Bigelow, 'has a close relation to the subject of estoppel by former judgment, and may be considered as the criminal law counterpart of the same doctrine. But the doctrine rests upon technical notions of jeopardy, and not upon the principle of *res judicata*,' etc. [Bigelow on Estoppel (3 Ed.) 47.] . . .

"The doctrine of former jeopardy, as we have said, is the nearest approach to it; and to avail himself of that defense, the defendant must plead *autrefois acquit* or *convict*, which is said to be an essential prerequisite to the introduction of the record of the prior procedure.

[Whart. Crim. Ev., sec. 592; 1 Bish. Crim. Proc., sec. 579.] And the plea must aver not only that the second prosecution is for the same offence, but that the defendant is the identical person who was proceeded against in the first prosecution. [1 Bish. Crim. Proc., sec. 580.]"

So whether DeMore was convicted and afterwards pardoned, or not pardoned and the conviction remained in force, was no concern of appellants. The issue before the court and jury was the guilt or innocence of appellant and not of DeMore.

We have discussed all questions preserved for our review in the motion for new trial. We have examined the record proper and find no reversible error. The judgment is, therefore, affirmed. *Cooley* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.